**IN THE COURT OF APPEALS OF IOWA**

No. 15-1269
Filed October 28, 2015

**IN THE INTEREST OF T.A.,**
        **Minor Child,**

**D.K., Father,**
        Appellant.

_____

        Appeal from the Iowa District Court for Johnson County, Deborah Farmer

Minot, District Associate Judge.


        A father appeals from a juvenile court's order terminating his parental

rights.  **AFFIRMED.**


        Kristin L. Denniger, Cedar Rapids, for appellant.

        Thomas J. Miller, Attorney General, Kathryn S. Miller-Todd, Assistant

Attorney General, Janet M. Lyness, County Attorney, and Patricia Weir, Assistant

County Attorney, for appellee.

        Anthony Haughton, Linn County Advocate, Cedar Rapids, attorney and

guardian ad litem for minor child.


        Considered by Doyle, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

A father appeals from a juvenile court's order terminating his parental rights to his child, T.A., under Iowa Code section 232.116(1)(e) and (h) (2015).[1] The father argues the State failed to prove the grounds for termination by clear and convincing evidence and the juvenile court erred in denying his request for an additional six months to work toward reunification with his child. He also contends termination is not in the child's best interests.

## I. Background Facts and Proceedings

The father has one child, T.A., born in May 2014. At the time of T.A.'s birth, his mother was already involved in the juvenile court system with her older son, D.A. Based upon concerns in D.A.'s case, the State filed a child-in-need-of-assistance (CINA) petition on behalf of T.A. in June 2014, when T.A. was only two weeks old. The juvenile court noted that the father was a primary reason for the initial removal of D.A. due to his drug activity and domestic violence toward the mother. Both before and after T.A. was born, the father was unavailable to participate in services due to active arrest warrants for new charges or probation violations, periods of time that he was in custody, and long periods of time when his whereabouts were unknown. The father failed to attend the combined adjudication/dispositional hearing in July 2014 and his rights were adjudicated by default. At that time he was subject to outstanding arrest warrants, and the juvenile court entered a protective order against the father in regards to T.A.,

---

[1] The juvenile court found the mother in default because she failed to appear to contest the termination proceedings. The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(h). She does not appeal.

prohibiting him from having any contact with his son, "except for supervised visitation if authorized by the juvenile court and approved by the [Iowa] Department of Human Services [(DHS)]."

T.A. was not removed from the mother's care and custody following the CINA adjudication because the court found she was making good progress in the older child's case. In September 2014, the older child was returned to the mother's care. But in November 2014, both children were removed and placed with their maternal grandmother. During that time, the father never contacted DHS, and he had missed hearings in August and November. In early December 2014, the court granted his attorney's request to withdraw from the case based upon the attorney's inability to communicate or contact the father, as his whereabouts were unknown.

In February 2015, the father was again arrested. Following that arrest, the father requested new counsel and paternity testing that established he is T.A.'s biological father. In March 2015, the father was placed in a local community corrections facility. In April 2015, he absconded, was arrested, and returned to jail. That same month, the State filed a petition to terminate the father's parental rights following a permanency hearing in the case at which he did not appear. In June 2015, the juvenile court held a termination of parental rights hearing. Earlier that month, the father had been sentenced to sixty days in jail for contempt of court and ordered to return to the community corrections facility after completing his sentence.

At the termination hearing, the guardian ad litem (GAL) supported the State's petition and stated that termination was in the child's best interests so that he could achieve stability and permanency. The father was incarcerated at the time of the termination hearing but submitted a written statement the following day requesting that the court grant him additional time to work toward reunification.

In July 2015, the juvenile court entered an order terminating the father's parental rights under Iowa Code section 232.116(1)(e) and (h), based upon his "history of failing to participate in services, unavailability, and incarceration." The court found reasonable efforts were made to reunify the father with his child, but he failed or refused to participate in services. The court found that T.A. could not be returned to the father's care and custody at the time of the termination hearing without continuing to be in need of assistance because he was unable to demonstrate that he could obtain stable employment, "avoid additional criminal behavior, stay sober, and get out of [the community corrections facility]." The court further found "that return of the child[ ] to parental custody would be detrimental to [his] physical, emotional and psychological health and well-being because none of the parents have demonstrated the ability or desire to protect the child and to meet his needs, and because the father[ ] [is a] stranger[ ] to [his] son[] ." The juvenile court denied the father's request for additional time to work toward reunification because "it would not result in the return of the child to his care within the next six months in light of his incarceration and his failure to participate in services when he was not in custody." This appeal followed.

**II.     Standard of Review**

We review termination-of-parental-rights proceedings de novo.  *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).  We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but are not bound by them.  *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).  Our primary consideration is the best interests of the child.  *Id.* at 776.

**III.    Analysis**

The juvenile court terminated the father's parental rights to his son under Iowa Code section 232.116(1)(e) and (h).  When a juvenile court terminates parental rights on more than one ground, we may affirm the order on any of the statutory grounds supported by clear and convincing evidence.  *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).  Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence.  *Id.* at 706.

Under section 232.116(1)(h), the court may terminate parental rights if the court finds that the State has proved by clear and convincing evidence the child (1) is three years old or younger; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parents for at least six of the last twelve months, or the last six consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the custody of the parents at the time of the termination hearing.

There is no dispute that T.A. is under the age of three.  He was adjudicated CINA in July 2014.  He was removed from his parents' physical

custody in November 2014, and has not had any trial periods at home. At the time of the termination hearing in June 2015, T.A. had been removed from the physical custody of his parents for the last six consecutive months and could not be returned to the custody of his father because he was incarcerated and awaiting placement in a community corrections facility. Furthermore, the father is not entitled to an additional six months because he has not proved that the need for removal will no longer exist at the end of that six-month period. *See* Iowa Code § 232.104(2)(b). The father was expected to spend up to one year in the community corrections facility and any further significant violations could result in prison sentences. A grant of additional time would only delay the permanency and stability that T.A. needs. We cannot ask this child to continuously wait for his father to become a stable parent. *In re D.W.*, 791 N.W.2d at 707. "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). Accordingly, we find clear and convincing evidence that the statutory requirements for termination have been met and we affirm the termination of the father's parental rights.

Even if a statutory ground for termination is met, a decision to terminate must still be in the best interests of the child after a review of section 232.116(2). *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). The father contends that termination of his parental rights was not in the child's best interests. Iowa Code § 232.116(2); *see In re N.M.*, 528 N.W.2d 94, 96 (Iowa 1995) (holding that a rebuttable presumption exists that parental custody serves a child's best interests). He further claims "that his familial bond with T.A. can transcend the

7

challenges posed by his incarceration," and "that he is determined to know his son and to be a part of his life no matter how hard he has to work for that privilege."

We have thoroughly reviewed the record before us "giv[ing] primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The father appeared before the court only once regarding T.A.'s CINA case at the beginning of July 2014. He never had any visits or other contact with the child. The child's maternal grandmother loves the child, has been his caregiver since November 2014 when he was six months old, and is willing to adopt him. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d at 777 (quoting *In re P.L.*, 778 N.W.2d at 41). Thus upon our de novo review of the record, we conclude that termination of the father's parental rights is in the child's best interests.

**AFFIRMED.**